UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| TIMOTHY CRANE #779001, | Case No. 2:18-cv-00171 |
|       Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| HEIDI WASHINGTON and<br>ERICA HUSS, | |
|       Defendants.     / | |

**REPORT AND RECOMMENDATION**

**I.     Introduction**

Timothy Crane filed this civil rights action under 42 U.S.C. § 1983 on October 1, 2018. (ECF No. 1.) Crane was a prisoner in the Michigan Department of Corrections (MDOC) when he filed his complaint.

Crane alleged that the MDOC's policy regarding permanent termination of visitation rights following two convictions for substance abuse misconduct tickets – MDOC Policy Directive (PD) 05.03.140 – violated his rights under the First, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.[1] Crane acknowledged

---

[1] Crane asserts that his due process rights under the Fifth and Fourteenth Amendments were violated. (*See* ECF No. 1, PageID.12, 14.) The Fifth Amendment only applies to claims against the federal government and Crane's claims are against employees of the State of Michigan. Thus, the undersigned concludes that Crane has failed to state a Fifth Amendment claim. *See Scott v. Clay County, Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (stating that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the

1

two convictions for substance abuse misconduct tickets in 2012, and said that he has been denied visitation since then.

Crane sued Defendants in their official and personal capacities, and sought injunctive and declaratory relief as well as damages. Crane also sought to pursue his case as a class action. Crane's request for class certification was denied by this Court. (ECF No. 5.)

This Court did not issue a screening opinion in this case. The undersigned recently learned that Crane was released from prison on November 19, 2019. Thus, as an initial matter, his request for injunctive relief has been rendered moot and the Court may dismiss Crane's claims against Defendants in their official capacities. But more importantly, in reviewing Defendants' pending motion for summary judgement, the MDOC policy regarding permanent restrictions on visitation has been ruled constitutional by the U.S. Supreme Court in *Overton v. Bazzetta*, 539 U.S. 126 (2003) (*Bazzetta I*) and *Bazzetta v. McGinnis*, 430 F.3d 795 (6th Cir. 2005) (*Bazzetta II*). This Court has dismissed claims like Crane's in screening opinions in other recent cases.[2] Accordingly, the undersigned respectfully recommends this Court exercise its

---

Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government. *Ergo*, the instant complainant's citation to the Fifth Amendment Due Process Clause was a nullity, and redundant of her invocation of the Fourteenth Amendment Due Process Clause.") (internal citations omitted).

[2] *See, e.g.*, *Jennings v. MaClaren*, No. 1:17-CV-564, 2017 WL 3187520, *3 (W.D. Mich. July 27, 2017); and *Bostrom v. Rowland*, No. 1:15-CV-336, 2015 WL 4546582, *4-*8 (W.D. Mich. July 28, 2015).

authority under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c) to dismiss this case because Crane fails to state a claim upon which relief may be granted.

In addition, the policy Crane challenges allows the MDOC Director to remove the visitation restriction if some criteria are met. This determination, however, is left to the Director's discretion. Crane's Misconduct Summary Record (ECF No. 43-14, PageID.248) indicates that he accumulated in excess of 140 additional misconduct convictions from the time of his second substance abuse misconduct conviction in June 2012 and July 2019. His record reflects numerous convictions for assault and battery on staff and other prisoners, disobeying direct orders, threatening behavior, destruction of property, insolence, fighting, and being out of place. As the Supreme Court noted in *Bazzetta I*, "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." 539 U.S. at 134. Given Crane's record, the undersigned concludes that his challenge to the MDOC's visitation restriction in his particular case is frivolous. The undersigned respectfully recommends dismissal on this basis as well.

## II. Screening Standards

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read

Crane's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Crane's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying those standards, the undersigned respectfully recommends that the Court (1) dismiss Crane's request for injunctive relief because it is moot, (2) dismiss Crane's claims against Defendants in their official capacity as moot, and (3) dismiss Crane's claims because he has failed to state a claim upon which relief can be granted and because his claims are frivolous.

### III. Crane's Allegations

Crane challenges the constitutional validity of a MDOC policy that restricts visitation privileges for certain prisoners who are adjudicated guilty of certain misconducts. Crane contends that the policy is constitutionally invalid because it infringes upon his First Amendment right of free association, his Eighth Amendment right to be free from cruel and unusual punishment, and his right to due process under the Fourteenth Amendment. Crane alleges that this policy violates his rights because of its broad nature, its lack of a fixed time limit, its lack of criteria to allow prisoners to regain the visitation privileges, and due to Crane's inability to appeal the MDOC Director's decision to restrict a prisoner's visitation rights.

According to Crane, on July 11, 2012, his visitation privileges were restricted after he was adjudicated guilty of two separate Class I misconducts for possession of controlled substances.[3] (ECF No. 1, PageID.3.) Crane says the waited the required

---

[3] Crane does not challenge his guilty determinations. (ECF No. 1, PageID.3.)

4

two years and then requested to have his privileges reinstated. He says this reques was denied. (*Id.*) Crane says that over the next five years, he submitted six more requests that were all denied. (*Id.*) Crane alleges that these denials were inappropriate because he had not received another misconduct for possession of controlled substances. (*Id.*, PageID.4.)

## IV. Moot Claims

Courts must raise jurisdictional issues *sua sponte* because they lack the authority to resolve moot or abstract issues. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (stating "[m]ootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions") (internal quotations marks and citations omitted); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir.1993) (stating "[q]uestions of jurisdiction are fundamental matters which [a court] may review *sua sponte*").

Article III's case-or-controversy requirement subsists throughout all stages of the litigation. *United States v. Juvenile Male*, 564 U.S. 932, 936-37 (2011) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed"). The doctrine of mootness is a corollary to Article III's case-or-controversy requirement.

When an inmate files suit against prison officials at his place of incarceration seeking declaratory and injunctive relief, and that inmate is subsequently transferred or released, courts routinely dismiss the prisoner's requests for declaratory and injunctive relief as moot. *See, e.g., Kensu v. Haigh*, 87 F.3d 172, 175

(6th Cir. 1996) (stating "to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail"); *Abdur–Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir.1995); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir.1993). This is because an inmate's transfer or release ends the alleged violations of his or her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger*, 983 F.2d at 724.

On November 19, 2019, Crane was placed on parole.[4] Because Crane is no longer detained within the MDOC, he is no longer subject to MDOC's visitation policy. Crane's request for injunctive relief is thus moot and must be dismissed. Crane's claims against Defendants for damages, costs and fees remain. But Crane cannot sue Defendants in their official capacities and seek damages. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

---

[4] *See* Michigan Dept. of Corrections, Offender Tracking Information System (OTIS), http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=779001 (last visited June 14, 2020).

"There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.* But, as explained above, Crane is not entitled to prospective relief because his claim is now moot.

V.    **Failure to State a Claim**

   a.  **Legal Standard**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

7

alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### b. Controlling Authority

In 1995, MDOC acted to curve the widespread use of drugs and alcohol within the prison system by issuing policies that limit prisoners' visitation rights. Those policies were published within MDOC PD 05.03.140. This PD empowers the MDOC director to strip a prisoner of his or her visitation privileges when the prisoner "is

found guilty administratively of '[t]wo or more violations of the major misconduct charge of substance abuse,' *e.g.* possession of narcotics, alcohol, unauthorized prescription drugs, or drug paraphernalia, or for failure to submit to a drug test." *Bazzetta II*, 430 F.3d at 797 (quoting *Bazzetta v. McGinnis*, 286 F.3d 311, 321 n. 2 (6th Cir. 2002)).

In August 1995, in a class action, prisoners challenged constitutional validity of the MDOC's visitation policy on its face. *Id.* at 797-98. The class specifically argued that "the permanent ban on visitors for two violations of the drug abuse policy: (1) infringed the prisoners' First Amendment right of intimate association and was not reasonably related to a valid penological objective; (2) constituted cruel and unusual punishment prohibited by the Eighth Amendment; and (3) violated the prisoners' Fourteenth Amendment procedural due process rights."[5] *Id.*

In 2003, the United States Supreme Court addressed the challenged policy under the First and Eighth Amendment. *Bazzetta I*, 539 U.S. 126. After applying the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), the Court held that the policy was constitutionally valid under the First Amendment. *Bazzetta I*, 539 U.S. at 131. The Court also concluded that the policy did not violate the prisoners' Eighth Amendment rights because withdrawal of visitation privileges is commonplace amongst States to effect prison discipline. *Id.* at 137.

---

[5] Here, Crane challenges that same policy with the same claims. (*See* ECF No. 1, PageID.1.) Crane attempts to distinguish his claims from those alleged in *Bazzetta I* by arguing that the facts in his case fit within the exception articulated in *Bazzetta I* in dicta. (*See Bazzetta I*, 539 U.S. at 137.) For the reasons explained in detail below, Crane's distinctions are without a difference.

In addition, in *Bazzetta I*, the Court specifically upheld the policy provision that bars visitations entirely without fixed time limits when a prisoner receives two or more misconducts for substance abuse. *Id.* at 133-134. It reasoned that "[d]rug smuggling and drug use in prison are intractable problems" and that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." *Id.* Despite its holding, the Court added that:

> If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations. An individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards, however, would not support the ruling of the Court of Appeals that the entire regulation is invalid.

*Id.* at 137.

The case was remanded to the district court for further consideration in light of *Bazzetta I*. Upon remand, the Sixth Circuit noted that the Supreme Court's holding in *Bazzetta I* "reserved 'any argument that an individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards would pass muster under the First and Eighth Amendments as incorporated by the Fourteenth Amendment.'" *Bazzetta v. McGinnis*, 73 F. App'x 842 (6th Cir. 2003). The district court then ruled that the plaintiffs' procedural due process rights were violated by the policy when it strips prisoners of visitation privileges for an indefinite period of time.

The defendants appealed, which led to the Sixth Circuit's opinion in *Bazzetta II*. In *Bazzetta II*, the court noted that a procedural due process analysis begins with

10

party a determination of whether there existed a liberty interest that has been interfered with by the state. *Bazzetta II*, 430 F.3d at 801. The court held that a prisoner did not have a liberty interest in the prison visitation policy. *Id.* at 802-03 (citing *Sandin v. Conner*, 515 U.S. 472, 481 (1995)).

### c. Analysis

With respect to Crane's First Amendment free association claim, the Supreme Court's application of the *Turner* factors in *Bazzetta I* to MDOC PD 05.03.140 is binding and remains as true today as it was in 2003. *See Bazzetta I*, 539 U.S. at 135-136. In *Bazzetta I*, the Court held that PD 05.03.140 did not violate the prisoners' First Amendment right to free association. *Id.* Therefore, the undersigned concludes that Crane has failed to state a First Amendment free association claim.

Second, in *Bazzetta I*, the Court held that MDOC's visitation policy did not violate the Eighth Amendment because "Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline." *Id.* at 137. This Court is bound by this holing as well.

Crane's complaint challenges the procedural aspects of PD 05.03.140. And he also claims a violation of his substantive due process rights. As explained above, *Bazzetta II* forecloses Crane's procedural due process claim because Crane does not have a liberty interest in visitation that the MDOC infringed.

Based on the reasoning in *Bazzetta I* and *II*, Crane's *substantive* due process claim also fails. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend.

XIV. "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Bowers v. City of Flint,* 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted)). Crane's reference to "substantive due process rights" on page 12 of his complaint is not sufficient to survive screening. "[I]dentifying a new fundamental right subject to the protections of substantive due process is often an 'uphill battle,' . . . as the list of fundamental rights 'is short.'" *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Blau v. Fort Thomas Pub. Sch. Dist.,* 401 F.3d 381, 393 (6th Cir. 2005) and *Seal v. Morgan,* 229 F.3d 567, 575 (6th Cir.2000)). Crane has not identified a fundamental right that was infringed by the Defendants' actions.

"Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it violates the decencies of civilized conduct." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (internal quotations and citations omitted). As noted repeatedly in *Bazzetta I* and *II*, incarceration necessarily involves a loss of contact with friends and family. Nothing in the PD shocks the conscience or violates the standards of civilized conduct. Thus, Crane has not stated a substantive due process claim.

### VI. Crane's Due Process Claims are Frivolous

Crane initially sought certification of a class action. However, he also makes claims that suggest that the regulation at issue here was unfairly applied in his individual case. Regardless of whether Crane challenges PD 05.03.140 on its face or as applied in his case, his claim is frivolous. As noted in the introduction, Crane's Misconduct Summary Record (ECF No. 43-14, PageID.248) indicates that he accumulated in excess of 140 additional misconduct convictions from the time of his second substance abuse misconduct conviction in June 2012 through July 2019. His record reflects numerous convictions for assault and battery on staff and other prisoners, disobeying direct orders, threatening behavior, destruction of property, insolence, fighting, and being out of place. As the Supreme Court noted in *Bazzetta I*, "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." 539 U.S. at 134. Given Crane's record, the undersigned concludes that his challenge to the MDOC's visitation restriction in his particular case is frivolous.

### VII. Recommendation

The undersigned respectfully recommends that the Court dismiss Crane's case with prejudice because his claims are foreclosed by *Bazzetta I* and *II*, his claims are frivolous, and his request for injunctive relief is moot.

Dated:  July 17, 2020                           /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).